UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO WHEATLEY,<br><br>    Plaintiff,<br><br>    v.<br><br>D. DOMINGUEZ, et al.,<br><br>    Defendants. | Case No.: 1:20-cv-00481-CDB<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 46) |

Plaintiff Ricardo Wheatley is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. section 1983. This action proceeds on Plaintiff's Eighth Amendment excessive force claims against Defendants Dominguez and Flores, Eighth Amendment failure to intervene claims against Dominguez, Denney, and Hernandez, and Eighth Amendment medical indifference claims against Dominguez, Denney, Flores, and Hernandez.

**I.     INTRODUCTION**[1]

The Court issued its Discovery and Scheduling Order on February 20, 2024. (Doc. 36.)

On February 28, 2025, Defendants filed a motion for summary judgment. (Doc. 46.) Defendants' motion included a *Rand*[2] warning (Doc. 46-1), addressing the requirements

---

[1] Because all parties consented to the jurisdiction of the assigned magistrate judge for all further proceedings, including entry of judgment, the matter was reassigned to the undersigned on March 1, 2024. (*See* Doc. 39 [Consent Minute Order].)

[2] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

concerning an opposition to a motion for summary judgment. Despite the passage of more than 21 days following Defendants' filing and service of their motion, Plaintiff failed to file an opposition or statement of non-opposition to the motion.

Accordingly, on March 31, 2025, the Court issued its Order to Show Cause (OSC) in Writing Why Sanctions Should Not Be Imposed for Plaintiff's Failure to File an Opposition or Statement of Non-Opposition. (Doc. 49.) Plaintiff was ordered to respond to the OSC within 14 days, or, alternatively, to file an opposition or statement of non-opposition to Defendants' motion for summary judgment. (*Id*.)

On April 17, 2025, Plaintiff filed an untitled document seeking an extension of time within which to file an opposition to Defendants' summary judgment motion. (Doc. 50.)

On April 21, 2025, the Court issued its Order Discharging Order to Show Cause and Order Granting Plaintiff's Request for a 90-Day Extension of Time Within Which to Oppose Defendants' Motion for Summary Judgment. (Doc. 51.) Plaintiff was ordered to file any opposition "**no later than July 18, 2025**." (*Id*. at 2) (emphasis in original.)

On June 26, 2025, Plaintiff filed an untitled document seeking an additional 30 days within which to oppose Defendants' summary judgment motion, stating he was "almost done." (Doc. 52.)

The Court issued its Order Granting Plaintiff's Request for a 30-Day Extension of Time Within Which to Oppose Defendants' Motion for Summary Judgment on June 30, 2025. (Doc. 53.) As such, Plaintiff was ordered to "file an opposition to Defendants' motion for summary judgment **no later than Monday, August 18, 2025**." (*Id*. at 2, emphasis in original.)

To date, Plaintiff has failed to file an opposition to Defendants' summary judgment motion and the time to do so has passed. Given the foregoing, the Court considers Defendants' summary judgment motion to be unopposed.

## II. APPLICABLE LEGAL STANDARDS

### *Motions for Summary Judgment*

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

2

Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials...." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or shows that the materials cited by the movant do not establish the absence of a genuine dispute. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Further, the opposing party must also demonstrate that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see

whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

A court may grant an unopposed or inadequately opposed motion for summary judgment if the supporting papers are sufficient to warrant granting the motion and do not on their face reveal a genuine issue of material fact. *See Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

### *Eighth Amendment: Excessive Force*

"[T]he unnecessary and wanton infliction of pain on prisoners constitutes cruel and unusual punishment" in violation of the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 328 (1986) (internal quotation marks & citation omitted). As courts have succinctly observed, "[p]ersons are sent to prison as punishment, not *for* punishment." *Gordon v. Faber*, 800 F. Supp. 797, 800 (N.D. Iowa) (quoting *Battle v. Anderson*, 564 F.2d 388, 395 (10th Cir. 1977)) (citation omitted). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks & citation omitted).

A correctional officer engages in excessive force in violation of the Cruel and Unusual Punishments Clause if he (1) uses excessive and unnecessary force under all the circumstances, and (2) "harms an inmate for the very purpose of causing harm," and not "as part of a good-faith

effort to maintain security." *Hoard v. Hartman*, 904 F.3d 780, 788 (9th Cir. 2018). In other words, "whenever prison officials stand accused of using excessive physical force …, the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In making this determination, courts may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. Courts may also consider the extent of the injury suffered by the prisoner. *Id.* However, the absence of serious injury is not determinative. *Id.*

### *Eighth Amendment: Failure to Intervene*

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *Farmer*, 511 U.S. at 832-33; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure to intervene can support an excessive force claim where the bystander-officers had a realistic opportunity to intervene but failed to do so. *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (stating failure to intervene can violate prisoner's Eighth Amendment rights). "A guard who stands and watches while another guard beats a prisoner violates the Constitution ...." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007).

### *Eighth Amendment: Deliberate Indifference to Serious Medical Need*

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition

could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060).

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison

official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference based on delay in treatment must show delay led to further injury).

### III.  PLAINTIFF'S ALLEGATIONS

Briefly stated, in the operative complaint,[3] Plaintiff alleges that on July 19, 2019,[4] while he was incarcerated at Kern Valley State Prison in Delano, California, he was having a mental breakdown. Plaintiff alleges officers were aware of his breakdown but refused "to alert medical." Plaintiff then cut his wrists and attempted to hang himself with a sheet. The "sheet broke" and Plaintiff fell to the floor. He was out of breath and still did not receive medical help, even after an attempted suicide "and self-mutilation."

Further, Plaintiff contends that when correctional staff entered his cell, Defendant Dominguez slammed Plaintiff back to the floor and Defendant Flores jumped on his back and placed him in a chokehold. Dominguez then kicked Plaintiff "in the forehead with his steel boot." He also maintains no one intervened to stop the assault.

### IV.  DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Defendant submitted the following statements of undisputed facts:

1.  The procedure for emergency cell extractions is outlined in section 51020.12.2 of the Department of Corrections and Rehabilitation's Department Operation Manual (DOM).

---

[3] *See* Doc. 22 (second amended complaint); *see also* Docs. 14 (first amended complaint) & 21 (second screening order).

[4] Plaintiff testified at his deposition that he believed the incident occurred on July 19, 2019, whereas defense counsel referenced an incident date of July 18, 2019. *See* Deposition of Ricardo Wheatley, Jr., at 10:7-10 & 16:16-23. The relevant incident and medical reports reveal the date of the incident to be July 18, 2019. *See* Doc. 46-6 at 28-61 (Declaration of Hancock, Ex. 2).

7

2. As defined by section 51020.12.2, "[a]n extraction is the involuntary removal of an inmate from an area and usually occurs when the inmate is in a confined area such as a cell, holding cell, shower, or small exercise yard."

3. "Extractions can be conducted as a controlled or immediate use of force."

4. "Immediate extractions occur when an imminent threat exists. Some examples of when an immediate extraction may be necessary are: to prevent or stop, great bodily injury and/or serious bodily injury, attempted suicide, self–harm, in-cell assault, or for medical concerns such as an inmate who is non-responsive, convulsing, or seizing."

5. When conducting an emergency cell extraction, officers are entitled to equip a riot helmet with a protective face shield, a protective vest, a protective shield, hand-held batons, and handcuffs.

6. As an emergency cell entry is considered an immediate use of force, advanced planning, staffing, and organization are not required.

7. However, all force must be reasonable and in accord with applicable standards for deadly or non-deadly force.

8. On July 18, 2019 in Facility B, Building 4 at Kern Valley State Prison, nonparty correctional staff informed Defendant Sergeant Denney that Plaintiff completely covered his cell windows with cardboard and paper.

9. The nonparty correctional staff further explained that he or she was unable to get any response from Plaintiff.

10. These nonparty correctional staff were not any of the Defendants.

11. Plaintiff never informed Dominguez, Denney, or Flores of Plaintiff's mental breakdown.

12. After hearing this and around 12:27 P.M., Sergeant Denney immediately reported to Plaintiff's cell with nonparty Officer Fernandez and ordered Plaintiff to remove his window coverings and submit to handcuffs.

13. Plaintiff did not respond, and Denney could not see into Plaintiff's cell because of the window coverings.

14. Sergeant Denney then instructed nonparty Officer Fernandez to retrieve a protective shield, which would be used as a protective barrier in front of the food part, to safely view the condition of Plaintiff.

15. After Officer Fernandez placed the shield to cover the food port, Sergeant Denney opened the food port and shined her flashlight into Plaintiff's cell.

16. Officer Fernandez looked into the Plaintiff's cell and observed Plaintiff lying on the cell floor with a piece of white cloth wrapped around his neck.

17. Officer Fernandez also reported that Plaintiff was not moving.

18. Plaintiff continued to not move or respond to any orders—including the order to back up to the cuff port and submit to handcuffs.

19. Sergeant Denney then ordered an immediate cell entry to check Plaintiff's welfare.

20. Sergeant Denney also ordered the Control Booth Officer Hernandez to activate his personal alarm device and open Plaintiff's cell door.

21. Officer Hernandez then announced a Code 1 in Facility B Building 4 via his institutional radio.

22. Because of his vantage point from within the Control Booth with the other correctional staff in front of Plaintiff's cell, Officer Hernandez could not see into the cell.

23. Officer Hernandez was positioned in the control booth and was not present in the cell during the incident—nor was he permitted to leave the control booth.

24. When entering the cell, Officer Fernandez led in front of the correctional staff followed by Sergeant Dominguez as well as Officer Flores, and Officer Morales.

25. Once the cell door opened, Plaintiff quicky rose from the ground and advanced towards the correctional staff in an aggressive manner.

26. Plaintiff then grabbed the top of Officer Fernandez's protective shield, pulled it down, and struck Officer Fernandez on the right side of his face.

27. Using the protective shield and their combined body weight, Officer Fernandez and Sergeant Dominguez forced Plaintiff to the ground under the safety shield.

28. On the ground, Plaintiff continued to resist the correctional staff by thrashing his

bodyweight and kicking his legs rapidly under the shield.

29. Officer Fernandez and Sergeant Dominguez ordered Plaintiff to stop resisting and to submit to handcuffs.

30. Plaintiff then stopped moving his legs and resisting by placing his hands behind his back.

31. Once Plaintiff's hands were behind his back, Officer Morales placed handcuffs on Plaintiff with no resistance.

32. While Officer Flores began to place leg restraints on Plaintiff, Plaintiff forcefully kicked and pulled his legs and feet away from Officer Flores's hands.

33. In response to Plaintiff's resumed resistance, Officer Flores placed his knees and bodyweight on Plaintiff's calves and was able to apply leg restraints.

34. Officer Morales and Officer Flores then assisted Plaintiff to his feet, searched for contraband, and escorted him to Facility B Program Area for holding cell placement and a medical assessment.

35. Denney then announced a Code 4 via institutional radio.

36. After placing Plaintiff in a holding cell, Officer Morales removed the handcuffs from Plaintiff and conducted an unclothed body search.

37. Officer Morales also offered Plaintiff clean clothing, but Plaintiff refused.

38. At 12:45 P.M., medical staff saw Plaintiff for a medical assessment.

39. Plaintiff's medical assessment only noted injury to his face.

40. Specifically, the assessment noted that Plaintiff had an abrasion and dried blood above his right eye on his forehead as well as swelling below his right eye.

41. Plaintiff was seen for a medical evaluation before Officer Fernandez, Officer Flores, and Sergeant Dominguez received their medical evaluations.

42. After Plaintiff was transferred to a different prison, Plaintiff had another medical report conducted on July 19, 2019, which also only noted injury to his face.

43. After the incident, Officer Fernandez reported to the Treatment and Triage Area for a medical evaluation at 1:18 P.M. because of injuries suffered during the incident—

including injuries to his face, right elbow, and knees.

44. At 1:00 P.M., nonparty Investigative Services Unit Officer Bedolla was notified of the incident with Plaintiff.

45. Officer Bedolla then took several photographs of Officer Fernandez to document the injuries Officer Fernande[z] suffered from Plaintiff punching him.

46. Also after the incident, medical staff evaluated Officer Flores at 2:35 P.M. and Sergeant Dominguez at 1:00 P.M. because of injuries they suffered during the incident.

(*See* Doc. 46-3 [hereafter UDF].)[5]

## V.  DISCUSSION

Defendants assert the following arguments: (1) Defendants' use of force was warranted because they were attempting to subdue Plaintiff's attack and restore order; (2) Defendants are not liable for failure to intervene because the underlying excessive force claim fails and Defendants did not have the opportunity to intercede given the circumstances; (3) Defendants are not liable for medical indifference because the record proves that Defendants acted immediately as soon as they were aware of Plaintiff's self-harm; and (4) Defendants are entitled to qualified immunity because they did not violate Plaintiff's constitutional rights and their conduct was objectively reasonable. (Doc. 46-2.)

The Court has reviewed all the evidence presented, including supporting declarations of defense counsel, Defendant J. Hernandez, and B. Hancock, the transcript from Plaintiff's deposition taken December 12, 2024, and all exhibits, and Plaintiff's verified pleadings.

---

[5] Because Plaintiff did not file an opposition, he neither admitted nor denied the facts set forth by Defendants as undisputed nor filed a separate statement of disputed facts. Local Rule 260(b). A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. *McElyea v. Babbitt,* 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir. 1985); Fed. R. Civ. P. 56(e). Here, because Plaintiff has not complied with Rule 260(b), the Court deems Plaintiff to have admitted those facts not disputed by his complaint or other submissions. *See, e.g., Beard v. Banks*, 548 U.S. 521, 527 (2006) ("by failing specifically to challenge the facts identified in the defendant's statement of undisputed facts, [plaintiff] is deemed to have admitted the validity of the facts contained in the [defendant's] statement"); *Brito v. Barr*, No. 2:18-cv-00097-KJM-DB, 2020 WL 4003824, at *6 (E.D. Cal. July 15, 2020) (deeming defendant's undisputed facts as admitted after plaintiff failed to comply with Local Rule 260(b)); *see also Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (nonmovant's contentions in other pleadings are to be considered in connection with summary judgment motion so long as attested to under penalty of perjury).

11

### A. Defendants Dominguez and Flores Are Entitled to Summary Judgment on Plaintiff's Eighth Amendment Excessive Force Claim

#### 1. The Use of Force Was Necessary

Defendants Dominguez and Flores have presented evidence the use of force was necessary under the circumstances because after Plaintiff completely covered the windows of his cell with paper and cardboard, staff were unable to get any response from Plaintiff. UDF 8-9, 12-13; *see* UDF 1-7. And Plaintiff had never informed Defendants Dominguez, Denney, or Flores of his mental breakdown. UDF 11. Unable to get a response, Defendant Denney ordered an officer to retrieve a protective shield that could be used as a barrier in front of the cell's food port; once in place, Defendant Denney opened the food port and shined her flashlight into Plaintiff's cell. UDF 14-15; *see also* UDF 5. Plaintiff was observed lying on the cell floor with a white cloth wrapped around his neck and was not moving. UDF 16-18. He did not respond to orders to cuff up. UDF 18. Defendant Denney ordered an immediate cell entry and directed Defendant Hernandez to activate his personal alarm and to open Plaintiff's cell door. UDF 19-20; *see* UDF 4, 6. Once the cell door opened, Plaintiff quickly rose and responded aggressively, advancing toward staff. UDF 24-25. Plaintiff then grabbed the protective shield carried by Officer Fernandez, pulled it down, and struck Fernandez on the right side of the face. UDF 26. Even after Plaintiff was forced to the ground by staff, Plaintiff continued to resist. UDF 27-29, 32. Ultimately, Plaintiff was retrained in handcuffs and leg restraints. UDF 31, 33.

Thus, Defendants Dominguez and Flores have met their initial burden by demonstrating there is no genuine dispute as to any material fact concerning the first element of Plaintiff's excessive force claim. Fed. R. Civ. P. 56(a).

#### 2. Only Necessary and Appropriate Force Was Used

Defendants Dominguez and Flores have presented evidence demonstrating staff employed only necessary and appropriate force to overcome Plaintiff's assault on Officer Fernandez and continued resistance and to ensure institutional safety and security. UDF 25-29, 31-33. Thus, Defendants Dominguez and Flores have met their initial burden by demonstrating there is no genuine dispute as to any material fact concerning the second element of Plaintiff's excessive

12

force claim. Fed. R. Civ. P. 56(a).

### 3. The Use of Force Was Proportional to the Threat Posed

Defendants Dominguez and Flores have presented evidence demonstrating the use of force was proportional to the threat posed by Plaintiff – specifically, Plaintiff's striking Officer Fernandez and his ongoing resistance to orders to cuff up and submit to leg restraints. UDF 25-34. Thus, Defendants Dominguez and Flores have met their initial burden by demonstrating there is no genuine dispute as to any material fact concerning the third element of Plaintiff's excessive force claim. Fed. R. Civ. P. 56(a).

### 4. Plaintiff's Injuries Were Minor

Defendants Dominguez and Flores have presented evidence demonstrating that Plaintiff had an abrasion and dried blood above his right eye and swelling below his right eye. UDF 39-40. Defendants argue those injuries are minor and inconsistent with Plaintiff's allegations that he was placed in a chokehold and struck by a steel toed boot. Thus, Defendants Dominguez and Flores have met their initial burden by demonstrating there is no genuine dispute as to any material fact concerning the fourth element of Plaintiff's excessive force claim. Fed. R. Civ. P. 56(a).

### 5. Efforts Were Made to Temper the Severity of the Response

Defendants Dominguez and Flores have presented evidence demonstrating that efforts were made to temper the severity of the response. UDF 25-34; *see* UDF 36-37. Essentially, Defendants entered the cell to check on Plaintiff, responded to Plaintiff's immediate aggression by taking him to the ground and ordered him to cease resisting when Plaintiff offered resistance. Thus, Defendants Dominguez and Flores have met their initial burden by demonstrating there is no genuine dispute as to any material fact concerning the fifth and final element of Plaintiff's excessive force claim. Fed. R. Civ. P. 56(a).

### 6. Plaintiff Has Not Met His Burden of Production

As noted above, Defendants Dominguez and Flores have met their initial burden as to each element of Plaintiff's excessive force claim against them, by demonstrating there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Therefore, the burden shifts to Plaintiff as the non-moving party to establish that a genuine issue as to any material fact actually

does exist. *Matsushita*, 475 U.S. at 586. Plaintiff has failed to do so; he has tendered no evidence to support his claim in this action. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11; *Henry*, 983 F.2d at 950.

Further, the assertions made in Plaintiff's complaint do not establish the existence of any factual dispute. *See* Fed. R. Civ. P. 56(c); *Beard*, 548 U.S. at 527; *McElyea*, 833 F.2d at 197-98. Plaintiff has completely failed to offer proof concerning the essential elements of his Eighth Amendment excessive force claim against Defendants Dominguez and Flores. *Celotex*, 477 U.S. at 322.

Here, the record taken as a whole would not lead a rational trier of fact to find for Plaintiff on his Eighth Amendment excessive force claim. *Matsushita*, 475 U.S. at 587. In sum, Defendants Dominguez and Flores are entitled to summary judgment.

### B. Defendants Dominguez, Denney, and Hernandez Are Entitled to Summary Judgment on Plaintiff's Eighth Amendment Failure to Intervene Claim

Defendants Dominguez, Denney, and Hernandez contend Plaintiff's failure to intervene claim against them fails because he cannot establish excessive force and because they lacked the opportunity to intervene in these circumstances. Defendants have presented evidence that demonstrating that the space of the cell, its lighting, the number of staff involved in the incident, and its timing hindered any opportunity to intervene even had Plaintiff's excessive force claim been viable. UDF 8-9, 12-13, 15, 19, 24. Notably too, Defendant Hernandez was not present in the cell during the incident, nor could he observe the incident or leave his post. UDF 22-23. Thus, Defendants Dominguez, Denney, and Hernandez have met their initial burden by demonstrating there is no genuine dispute as to any material fact concerning Plaintiff's failure to intervene claim. Fed. R. Civ. P. 56(a). Therefore, the burden shifts to Plaintiff as the non-moving party to establish that a genuine issue as to any material fact actually does exist. *Matsushita*, 475 U.S. at 586. Plaintiff has failed to do so; he has tendered no evidence to support this claim. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11; *Henry*, 983 F.2d at 950.

Further, the assertions made in Plaintiff's complaint do not establish the existence of any factual dispute. *See* Fed. R. Civ. P. 56(c); *Beard*, 548 U.S. at 527; *McElyea*, 833 F.2d at 197-98.

Importantly, although Plaintiff alleges unidentified officers were aware he was experiencing a mental break down around the time of the use of force incident (*see* Doc. 22 at 3), he does not allege that Defendants were aware, nor does he refute their evidentiary showing that they were unaware of his mental health status. Further, although he alleges that he showed or attempted to show Defendants his wounds as they entered his cell (*see id.* at 4), he does not contradict Defendants' evidentiary showing that he presented aggressively and combatively when they entered. In short, Plaintiff has failed to offer proof concerning an Eighth Amendment failure to intervene claim against Defendants Dominguez, Denney, and Hernandez. *Celotex*, 477 U.S. at 322.

The record taken as a whole would not lead a rational trier of fact to find for Plaintiff on his Eighth Amendment failure to intervene claim. *Matsushita*, 475 U.S. at 587. Thus, Defendants Dominguez, Denney, and Hernandez are entitled to summary judgment.

### C. Defendants Dominguez, Denney, Flores, and Hernandez Are Entitled to Summary Judgment on Plaintiff's Eighth Amendment Deliberate Indifference to Serious Medical Needs Claim

Defendants Dominguez, Denney, Flores and Hernandez have presented evidence demonstrating that they acted quickly and without delay to respond to Plaintiff's serious medical needs. Specifically, they assert Plaintiff never made Defendants Dominguez, Denney, or Flores of his mental breakdown. UDF 11. As concerns Defendant Hernandez, he could not leave his assigned post in the control tower. UDF 23. Moreover, Defendants' evidence reveals that all staff responded quickly and without delay to Plaintiff's cell and to his medical needs. UDF 8-9, 12-21, 24, 36-38, 41-42; *see* UDF 43, 46. Thus, Defendants Dominguez, Denney, Flores, and Hernandez have met their initial burden by demonstrating there is no genuine dispute as to any material fact concerning Plaintiff's deliberate indifference to serious medical needs claim. Fed. R. Civ. P. 56(a). Therefore, the burden shifts to Plaintiff as the non-moving party to establish that a genuine issue as to any material fact actually does exist. *Matsushita*, 475 U.S. at 586. Plaintiff has failed to do so; he has tendered no evidence to support this claim. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11; *Henry*, 983 F.2d at 950.

Further, the assertions made in Plaintiff's complaint do not establish the existence of any factual dispute. *See* Fed. R. Civ. P. 56(c); *Beard*, 548 U.S. at 527; *McElyea*, 833 F.2d at 197-98. Although he alleges Defendants "never pressed [their] alarms for medical" (*see* Doc. 22 at 4), Plaintiff acknowledges his assessment and characterization was made while he was laying on the ground unresponsive; hence, he is not a percipient witness or competent to speculate about whether the responding officers summonsed medical assistance. In short, Plaintiff has failed to offer proof concerning an Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Dominguez, Denney, Flores, and Hernandez. *Celotex*, 477 U.S. at 322.

In conclusion, the record taken as a whole would not lead a rational trier of fact to find for Plaintiff on his Eighth Amendment deliberate indifference to serious medical needs claim. *Matsushita*, 475 U.S. at 587. Therefore, Defendants Dominguez, Denney, Flores, and Hernandez are entitled to summary judgment.

### *D. The Remaining Argument*

The Court will not address Defendants' argument that they are entitled to qualified immunity because it has determined Defendants are entitled to judgment on the merits as discussed above.

### VI. CONCLUSION AND ORDER

Based on the foregoing, this Court **HEREBY ORDERS** that:

1. Defendants' motion for summary judgment (Doc. 46) is **GRANTED**; and
2. The Clerk of the Court be directed to enter judgment in favor of Defendants Dominguez, Denney, Flores, and Hernandez, and to close this case.

IT IS SO ORDERED.

Dated:   **September 8, 2025**                          _____
                                                                      UNITED STATES MAGISTRATE JUDGE